UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VINCE HANCOCK | : | |
| | : | Civ. No. 3:14cv1751(VAB) |
| V. | : | |
| UNITED STATES OF AMERICA | : | September 24, 2018 |

**PETITIONER'S REPLY BRIEF
IN SUPPORT OF MOTION FOR LEAVE TO AMEND**

The Petitioner, Vince Hancock, though undersigned counsel, files this reply brief to address arguments raised by the Government in its Opposition filed September 13, 2018. See Dkt. 44.

In its Opposition, the Government principally argues that Mr. Hancock's motion for leave should be denied as futile because the proposed amended claims have no merit. See Govt. Opp. at 3. For the reasons discussed below, the Government's opposition should be denied because it puts the cart before the horse. Whether Mr. Hancock is ultimately able to meet his burden on the merits, after further proceedings, discovery (if permitted), and briefing, is not something that should be decided at this stage. The issue at hand is whether Mr. Hancock's proposed amendments, viewed on the pleadings and in the light most favorable to him, could plausibly lead to relief. Freedom Int'l Trucks, Inc. of New Jersey v. Eagle Enterprises, Inc., 182 F.R.D. 172, 175 (E.D. Pa. 1998)("in deciding whether an amendment is futile, a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff").

Here, Mr. Hancock's claims are legally sufficient, and they should be allowed to proceed.

I.     **THE COLLATERAL ATTACK WAIVER DOES NOT BAR MR. HANCOCK'S AMENDED CLAIMS**

Consistent with its current office policy, the Government does not argue that Mr. Hancock's collateral attack waiver operates as a bar to his ineffective assistance of counsel claim. Instead, it argues that the waiver bars his additional claim "that the sentencing court committed a guidelines error in applying the career-offender enhancement," which is identified as Claim No. 2 in Mr. Hancock's proposed amended §2255 motion. Govt. Opp. at 5.[1]

This argument fails, first and foremost, because waiver is an affirmative defense that must be pled by the Government in its answer. It is not appropriate to deny a motion to amend on the basis of an affirmative defense that has not yet been pled in response to the amended pleading.

Even if the Court considers the Government's defense of waiver, however, it does not foreclose Mr. Hancock's non-constitutional sentencing error claim. The collateral attack waiver in this case was entered into by Mr. Hancock as a result of the ineffectiveness of his trial counsel, who stipulated to the Career Offender range of 151-188 months. This incorrect Guidelines range was then used to frame the parameters of

---

[1] The Government's Opposition inverts the order of Mr. Hancock's claims when it discusses them. It refers to Mr. Hancock's non-constitutional sentencing error claim as the "first proposed claim," even though it is actually Claim No. 2 in the proposed amended pleading; and it refers to his ineffective assistance of counsel claim as his "second proposed claim," even though it is pled as Claim No. 1 in the proposed amended pleading.

2

the collateral attack waiver, setting the waiver at 151 months (the low end of the Career Offender range). Had Mr. Hancock's trial counsel insisted on a proper calculation of the Guidelines, Mr. Hancock's non-Career Offender Guideline range would likely have been 84-105 months, and the appeal waiver would have been set at 84 or 105 months, but not 151 months. In such a case, Mr. Hancock would have been permitted to appeal the eventual sentence he received—151 months—because it would have been above the low end (84 months) and the high end (105 months) of a waiver that correctly assumed that Mr. Hancock was not a Career Offender. In other words, the waiver should not have been agreed to at all, or its parameters should have been based on the correct, non-Career Offender range of 84-105 months. Because neither occurred, and because Mr. Hancock had no reason to know that it was based on the erroneous Career Offender range of 151-188 months, he unknowingly waived his right to challenge the sentence if it was higher than 84-105 months (the non-Career offender range).

This is the kind of unique circumstance that should preclude the Government from enforcing the waiver. While it is true that, in some sense, "[e]verything that occurs prior to a guilty plea or entry into a plea agreement informs the defendant's decision to accept or reject the agreement," Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008), the Second Circuit has held that a defendant's avoidance of a waiver can be successful if the a defendant is challenging "the constitutionality of *the process* by which he waived [his right to appeal]." United States v. Hernandez, 242 F.3d 110, 113 (2d Cir.2001) (emphasis added); see also Frederick v. Warden, 308 F.3d 192, 195 (2d Cir.2002) (describing such a challenge as "an attack on the validity of *the process* by which the waiver has been procured" (emphasis added)). In other words, as stated by

the Second Circuit in Parisi, "although challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's advice about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does." 529 F.3d 138-139 (citing Davis v. Greiner, 428 F.3d 81, 88 (2d Cir.2005) (finding ineffective assistance of counsel where attorney breached her "professional obligation to adequately inform her client about the considerations that are relevant to her client's decision to accept or deny a plea bargain").

Here, Mr. Hancock expects to show that his decision to agree to the appeal waiver was not knowing and voluntary because it was inextricably linked to his trial counsel's erroneous decision to agree to the Career Offender guideline and to stipulate to range of 151-188 months when, in fact, Mr. Hancock was not a Career Offender. Accordingly, the waiver is not enforceable and it does not bar Mr. Hancock's sentencing error claim, or any claim based on the prejudicial effect of a miscalculation of his Guidelines.

## II. THE NON-CONSTITUTIONAL SENTENCING ERROR CLAIM IS LEGALLY COGNIZABLE

If the waiver is not enforceable, the Government argues in the alternative that the sentencing error claim is not legally cognizable. See Gov't Opp. at 5-10. In doing so, the Government relies on many of the same cases cited by Mr. Hancock in his motion for leave. But those cases do not say that a sentencing error that is neither constitutional nor jurisdictional can never be sufficient to state a claim for relief. Rather, they hold that such a claim can lead to relief if the error contributed to a miscarriage of justice. See Hill v. United States, 368 U.S. 424, 428 (1962) (holding that collateral relief

4

is permitted where there is a "fundamental defect which inherently results in a complete miscarriage of justice," "an omission inconsistent with the rudimentary demands of fair procedure," or "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent").

It is also not necessarily the case, as the Government seems to suggest, that a Guidelines calculation error can never be an error so fundamental that it leads to a miscarriage of justice. In *Molina–Martinez,* the U.S. Supreme Court observed that "[t]he Guidelines' central role in sentencing means that an error related to the Guidelines can be particularly serious." 136 S. Ct. 1338, 1345 (2016). "A district court that 'improperly calculat[es]' a defendant's Guidelines range, for example, has committed a 'significant procedural error.'" Id. at 1345. Thus, "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." Id. at 1345. In other words, an error resulting in a higher range usually establishes a reasonable probability that a defendant will serve a prison sentence that is more than "necessary" to fulfill the purposes of incarceration. See 18 U.S.C. § 3553(a).

In fact, just this past summer, the U.S. Supreme Court issued its decision in Rosales-Mireles v. United States, 138 S. Ct. 1897, 1907 (2018), which addressed the issue of whether a miscalculation of a defendant's Guidelines range that was determined to be plain error would, in the ordinary case, seriously affect the fairness, integrity, or public reputation of judicial proceedings, and thus would call for the Court of Appeals to exercise its discretion to vacate defendant's sentence. The Court, once

again, emphasized the importance of correcting Guidelines errors, which, in and of themselves, can prejudice a defendant and lead to unnecessarily long prison sentences. "The risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error because of the role the district court plays in calculating the range and the relative ease of correcting the error." Id. at 1908. The Court also emphasized the role that correcting erroneous sentences plays in the public legitimacy of our justice system:

> In broad strokes, the public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair," and that "provide opportunities for error correction." Bowers & Robinson, Perceptions of Fairness and Justice: The Shared Aims and Occasional Conflicts of Legitimacy and Moral Credibility, 47 Wake Forest L. Rev. 211, 215–216 (2012). In considering claims like Rosales–Mireles', then, "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" United States v. Sabillon–Umana, 772 F.3d 1328, 1333–1334 (10th Cir. 2014) (Gorsuch, J.).

Id.

The foregoing decisions of the U.S. Supreme Court strongly suggest that merely arguing—as the Government does here—that a miscalculation of the Guidelines can never be a miscarriage of justice is not the end of the analysis. While an error that results a sentence that is only a few months longer might not qualify, a sentence that is possibly four to five years longer (151-188 months) than it might otherwise have been (84-105 months) due to the error—which is the case here—should be corrected. See Spencer v. United States, 773 F.3d 1132, 1155–56 (11th Cir. 2014) (Jordan, J., dissenting) ("what constitutes a fundamental defect resulting in a complete miscarriage of justice comes down to a matter of considered judgment;" "In my judgment, having an

6

individual serve an additional 81 months in prison due to an erroneous career offender designation under the advisory Sentencing Guidelines constitutes such a miscarriage of justice").

Finally, the Government suggests in a footnote that Mr. Hancock's allegation that the sentencing error must be corrected because it was "imposed in violation of the … laws of the United States," 28 U.S.C. §2255, is not worthy of any serious consideration by this Court.  See Gov't Opp. at 6 n.3 ("this argument warrants little discussion").  The Court should be skeptical, especially since the Government does not attempt to distinguish the cases cited by Mr. Hancock in support of the contention.  See Davis v. United States, 417 U.S. 333, 346, (1974)("the fact that a contention is grounded not in the Constitution, but in the 'laws of the United States' would not preclude its assertion in a § 2255 proceeding").

Moreover, in one of the cases cited by Mr. Hancock, Spencer v. United States, Judge Jordan explained quite succinctly how a Career Offender error could be a sentence imposed in violation of "the laws of the United States:"

> The Supreme Court has never defined the phrase "the laws of the United States" in § 2255. But there are strong reasons to believe that a career offender error under the advisory Sentencing Guidelines fits easily within that language. First, an error in computing the guideline range renders a sentence procedurally unreasonable and reversible on direct appeal. See, e.g., Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); United States v. Dougherty, 754 F.3d 1353, 1358 (11th Cir.2014). Second, the Supreme Court has recently held that the incorrect application of the advisory Sentencing Guidelines can result in an *ex post facto* violation. In so ruling, the Court expressly rejected the argument that "the Sentencing Guidelines lack sufficient legal effect to attain the status of a 'law' within the meaning of the *Ex Post Facto* Clause." Peugh v. United States, —— U.S. ——, 133 S.Ct. 2072, 2085–87, 186 L.Ed.2d 84 (2013). If the advisory Sentencing Guidelines are laws for *ex post facto* purposes, it is difficult to see why they are not

7

also laws under § 2255.

Spencer v. United States, 773 F.3d at 1156–57. This shows that the claim is legally sufficient and it should be allowed as an amended claim.

### III. THE PROPOSED INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM SHOULD BE ALLOWED TO PROCEED

The Government's final contention is that Mr. Hancock cannot meet his burden of proving that his trial counsel was ineffective for stipulating to the Career Offender designation, instead of objecting and preserving Mr. Hancock's right to challenge it. See Gov't. Opp. at 11. As noted above, the Government's objection is not well suited for an opposition to a motion to amend because it does not challenge the legal sufficiency of the claim, but instead asserts that Mr. Hancock may not be able to meet his burden on the merits if the amendment is allowed.

Even if it is well taken, the objection is wrong. It is not true that Mr. Hancock will unable to meet his burden of showing his attorney's ineffectiveness. The thrust of the Government's argument is that Mr. Hancock's §2255 motion is based primarily on decisions—e.g., Johnson, Shabazz, Epps, and Townsend—that were decided after he was sentenced. See Gov't Br. at 12. While that may be true, the decisional "building blocks" that should have suggested to Mr. Hancock's trial counsel that he should not stipulate to Mr. Hancock's status as a Career offender based on his robbery and drug trafficking convictions were in existence at the time his trial counsel stipulated to the Career Offender status. Indeed, even the Government seems to recognize that the ability to frame an objection was available to trial counsel at the time of Mr. Hancock's sentencing in 2012. See Govt. Opp. at 10 n.5 (citing McCoy v. United States, 707 F.3d 184, 187-88 (2d Cir. 2013) (discussing district court and Second Circuit decisions in

2007 and 2008 related to Connecticut drug convictions as predicates for federal sentencing enhancements)).

Adding further support to Mr. Hancock's claims is the fact that the Supreme Court's approach in <u>Mathis v. United States</u>, 136 S.Ct. 2243 (2016), a decision cited by the courts in <u>Shabazz</u>, <u>Townsend</u> and <u>Epps</u>, did not break new ground. <u>See</u>, e.g., <u>United States v. Marrero</u>, No. CR 9-208, 2017 WL 6557475, at *2 (W.D. Pa. Dec. 22, 2017) ("the Supreme Court indicated that its decision did not announce a new rule, but instead was dictated by longstanding precedent"); <u>id.</u> ("courts have noted that <u>Mathis</u> did not recognize a new rule or right; it merely clarified the process for comparing a state conviction to the generic federal offense") (internal quotation marks omitted).

Thus, the arguments that Mr. Hancock essentially asserts were available to his trial counsel—applying the categorical approach and determining whether Connecticut robbery and narcotics offenses qualified as federal predicates under federal law—should have caused his counsel <u>not</u> to stipulate to Career Offender status that exposed him to a sentence five to six times greater than his non-Career offender range. In other words, he contends that it was not reasonable for his counsel to stipulate to such a high sentencing range when it was the product of a Guideline sentencing enhancer that could have been–-and should have been—challenged. While Mr. Hancock may or may not prevail on this claim following a full review of the claim on its merits, he has certainly alleged enough to permit the claim to be added to his pending §2255 motion.

## Conclusion

For the foregoing reasons, the Court should grant Mr. Hancock's pending motion for leave to amend his §2255 motion and allow him to file the proposed amended claims.

    Respectfully submitted,

    */s/ Robert M. Frost, Jr.*
    Robert M. Frost, Jr. (ct 19771)

    FROST BUSSERT, LLC
    129 Church Street, Suite 226
    New Haven, CT 06510
    Tel:    (203) 495-9790
    Fax:    (203) 495-9795
    Email:    rmf@frostbussert.com

    Attorney for Vince Hancock

**CERTIFICATION**

I hereby certify that on this date a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

Dated at New Haven, Connecticut on this 24th day of September, 2018.

*/s/ Robert M. Frost, Jr.*
Robert M. Frost, Jr.