# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VINCE HANCOCK,
     Petitioner,

     v.

UNITED STATES OF AMERICA,
     Respondent.

No. 3:14-cv-1751 (VAB)

## RULING AND ORDER ON PENDING MOTIONS

On September 6, 2012, Vince Hancock ("Mr. Hancock" or "Petitioner") pled guilty to possession with intent to distribute and distribution of cocaine base and heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).[1] Petition Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("First Habeas Petition"), ECF No. 1; Ex. 1 [Judgment, Case No. 12-cr-15 VLB] at 1, ECF No. 1. He was sentenced to 151 months imprisonment followed by 36 months supervised release. *Id.*

On September 13, 2012, Mr. Hancock filed an appeal of his sentence with the Second Circuit. First Habeas Petition at 2; Gov't Resp. to Hancock's Mot., Ex. D, ECF No. 7-4; *U.S. v. Hancock*, No. 12-3638 (2d Cir. 2013), Dkt. 1. On August 23, 2013, the Second Circuit dismissed the appeal as barred by the waiver of appellate rights contained in Mr. Hancock's plea agreement with the government. *U.S. v. Hancock*, No. 12-3638, Dkt. 68, ECF No. 7-7.

On November 24, 2014, Mr. Hancock, *pro se*, filed a petition in the District of Connecticut to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. First Habeas Petition. Subsequently, and with the assistance of appointed counsel, Mr. Hancock twice moved

---

[1] Petitioner pled guilty to Count Four of the Indictment. First Habeas Petition at 2. "The remaining drug and firearm charges were dismissed at sentencing." *Id.*

to amend his petition. Mot. to Vacate *Nunc Pro Tunc*, ECF No. 23; Mot. to Amend/Correct Mot. to Vacate *Nunc Pro Tunc*, ECF No. 43; Pet. Second Am. Mot. Pursuant to 18 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Second Amended Habeas Petition").

Three motions are now pending: (1) a motion to vacate, set aside, or correct Mr. Hancock's sentence (the "First Habeas Petition"), ECF No. 1; (2) a motion to amend or correct the First Habeas Petition *nunc pro tunc*, ECF No. 43,[2] and (3) another motion to vacate, set aside, or correct Mr. Hancock's sentence (the "Second Amended Habeas Petition"), ECF No. 43-1.

For the reasons set forth below, the Court now **DENIES** Mr. Hancock's motion to vacate, set aside, or correct his sentence, ECF No. 1; **DENIES** Mr. Hancock's motion to amend or correct his motion to vacate, set aside, or correct his sentence, ECF No. 43, and **DENIES** Mr. Hancock's second motion to vacate, set aside, or correct his sentence, ECF No. 43-1.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

On January 18, 2012, a grand jury indicted Mr. Hancock on nine separate criminal charges: (1) possession with intent to distribute and distribution of cocaine base and heroin [June 15, 2011 count], (2) possession with intent to distribute and distribution of cocaine base and heroin [June 27, 2011 count], (3) possession with intent to distribute and distribution of cocaine base and heroin [July 21, 2011 count], (4) possession with intent to distribute and distribution of cocaine base and heroin [Aug. 3, 2011 count], (5) possession with intent to distribute and

_____

[2] Mr. Hancock has abandoned his First Amended Habeas Petition, Mot. to Vacate *Nunc Pro Tunc*, ECF No. 23, as its arguments have been invalidated by the recent *Beckles* decision and altered by the Second Circuit's decisions in *Townsend* and *Epps*. Mot. to Amend/Correct Mot. to Vacate *Nunc Pro Tunc*, ECF No. 43; *see Beckles v. U.S.*, 137 S. Ct. 886 (2017); *U.S. v. Townsend*, 897 F.3d 66 (2d. Cir. 2018); *U.S. v. Epps*, 322 F.Supp.3d 299 (D.Conn. 2018). The Court notes that Mr. Hancock's two primary arguments of ineffective assistance of counsel and beneficial legal changes have remained consistent throughout his habeas petitions. The Court is considering the merits of those arguments in the light most favorable to Petitioner.

distribution of heroin [Sept. 19, 2011 count], (6) possession with intent to distribute and distribution of heroin [Sept. 20, 2011 count], (7) unlawful possession of a firearm by a convicted felon, (8) possession with intent to distribute cocaine base, cocaine, and heroin, and (9) possession of a firearm in furtherance of a drug trafficking crime. *U.S. v. Vince Hancock*, Grand J. N-11-1, Indictment (Jan. 18, 2012), ECF No. 7-1.

On February 26, 2012, the United States of America (the "Government") offered Mr. Hancock a plea agreement: dismissal of eight of the nine charges against Mr. Hancock, including possession of a firearm under 18 U.S.C. 924(c)(1)(A), and no second offender notice under 21 U.S.C. § 851, if Mr. Hancock pled guilty to Count Four of the Indictment (i.e., Possession with intent to distribute and distribution of cocaine base and heroin [Aug. 3, 2011 count]). *U.S. v. Vince Hancock*, Plea Agreement (Feb. 26, 2012) ("Plea Agree."), ECF No. 7-2. The plea agreement required Mr. Hancock to waive most of his appeal and collateral attack rights:

> The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction and sentence. The defendant agrees not to appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, the conviction or sentence imposed by the Court if that sentence does not exceed 151 months of incarceration and a life term of supervised release . . . . The Government and the defendant agree not to appeal or collaterally attack the Court's imposition of a sentence of imprisonment concurrently or consecutively, in whole or in part, with any other sentence. The defendant acknowledges that he is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver.

*Id*. at 8.[3]

On March 14, 2012, Mr. Hancock appeared before Magistrate Judge Thomas P. Smith. Transcript of Change of Plea Hearing ("Plea Hearing Trans."), ECF No. 7-9. The hearing began

---

[3] ECF header pagination unless otherwise noted.

at 1:28 p.m. and ended at 3:03 p.m. *Id*. at 3, 81. Mr. Hancock was represented by trial counsel. *Id*. at 2. At the hearing, Judge Smith asked Mr. Hancock if trial counsel had provided him with a copy of the Indictment and Plea Agreement; Mr. Hancock answered "Yes." *Id*. at 12–13. Judge Smith asked Mr. Hancock if he understood the indictment and plea agreement; Mr. Hancock answered "Yes." *Id*. at 13. Judge Smith asked Mr. Hancock if he understood that the Guidelines sentence for the charge he was pleading guilty to, at his criminal history category, with a career offender enhancement would be 151 to 188 months in prison. *Id*. at 54. Mr. Hancock responded, "Yes. Yes." *Id*.

As to his appeal rights, Judge Smith asked Mr. Hancock "Do you understand and agree, as stated in your Plea Agreement, that you will not appeal or in any other way attack either your conviction or your sentence imposed by the Court, if the Court does not impose a prison sentence . . . . longer than 151 months, and if the Court imposes a lifetime period of supervised release?" *Id*. at 57. Mr. Hancock responded "Yes." *Id*. Judge Smith asked Mr. Hancock, "Sir, are you totally and completely satisfied with the legal representation and advice you have received?" *Id*. at 67. Mr. Hancock responded "Yes." *Id*.

Based upon Mr. Hancock's answers, Judge Smith found that he had pled guilty "knowingly, voluntarily, intelligently . . . with the effective assistance of legal counsel." *Id*. at 75–76. Mr. Hancock, his trial counsel, and Assistant United States Attorney Marc H. Silverman signed the plea agreement. Plea Agree. at 13.

On September 4, 2012, Mr. Hancock appeared before Judge Vanessa L. Bryant for Sentencing. Trans. of Sentencing Hearing ("Sentencing Trans."), ECF No. 7-10. Mr. Hancock was represented by the same trial counsel. *Id*. at 2. The Government sought a career offender

enhancement to Mr. Hancock's sentence but not a firearm enhancement (i.e., for the loaded Keltec P32 officers found in his closet). Gov't Resp. to Hancock's Mot at 23–24.

Judge Bryant conducted an independent calculation of Mr. Hancock's sentence. Sentencing Trans. at 5. She also concurred with Judge Smith, the Government, defense counsel, and the Probation Office that the Sentencing Guidelines range for Mr. Hancock's crime, with the career offender enhancement, was 151 to 188 months. *Id*. at 7. Judge Bryant then issued a finding on the appropriateness of the career offender enhancement given Mr. Hancock's prior offenses, which included a robbery in the first degree that involved the death of a delivery man and a narcotics charge similar to his present charge:

> [Mr. Hancock] committed virtually the identical offense back in 2007 . . . . an instance in which the deliveryman died, where the Defendant had conspired with others to rob this individual. The Defendant was not the triggerman, did not have possession of the gun, but knew that a firearm would be present . . . . There was a period of time after his service of incarceration on that Robbery 1st conviction, where the only offenses were more minor, but then in 2007 the Defendant was convicted for his possession of narcotics . . . with intent to distribute narcotics, as well as his possession of a firearm. When a search warrant was executed at his home, law enforcement recovered, I think it was heroin, marijuana, and crack cocaine. It's virtually identical to what happened four years later in this case, when a search warrant was executed at his home following six controlled purchases, and heroin, powder cocaine and crack cocaine were located, along with a loaded firearm . . . . At this point he qualifies as a career offender based on those two offenses. This is what the career offender Guidelines is meant for, this type of circumstances.

*Id*. at 9–10.

Judge Bryant enumerated the sentencing factors set forth in 18 U.S.C. 3553, *Id*. at 22–26, applied them to Mr. Hancock's case, *Id*., and then sentenced Mr. Hancock at the bottom of the Sentencing Guidelines range, 151 months, followed by three years of supervised release. *Id*. at 26. Following Judge Bryant's sentence, the Government dismissed all remaining criminal charges, consistent with the plea agreement. *Id*. at 59.

## B. Procedural Background

On September 13, 2012, Mr. Hancock filed an appeal of his sentence with the United States Court of Appeals for the Second Circuit ("Second Circuit"). Gov't Resp. to Hancock's Mot., Ex. D, ECF No. 7-4; *U.S. v. Hancock*, No. 12-3638 (2d Cir. 2013), Dkt. 1. Different counsel represented Mr. Hancock on appeal. Gov't Resp. to Hancock's Mot., Ex. D, ECF No. 7-5 ["Brief and Appendix for Appellant Vince Hancock."].

On May 1, 2013, Mr. Hancock's appellate counsel filed a thirty-one page brief in support of his appeal. His appellate counsel raised four arguments in support of a reduced sentence, including (1) the sentencing judge should have more fully considered Mr. Hancock's "extremely difficult upbringing . . . " and other personal challenges, *Id*. at 17–21; (2) the sentencing judge should not have imposed the career offender enhancement, though Mr. Hancock's prior crimes satisfied the technical requirements of U.S.S.G. § 4B.1 at the time of his sentencing, *Id*. at 28; (3) because the sentencing judge imposed the career offender enhancement, the Second Circuit had "good reason to doubt that the district court fully appreciated its authority to depart from enhancements required by the career offender guidelines," *Id*. at 30; and (4) that Mr. Hancock might not have fully understood the career offender stipulation of his plea agreement or the lengthy sentence he might face, *Id*. at 33.

Mr. Hancock's appellate counsel asked the Court to "agree that, given the totality of the circumstances in this case, the career offender designation on which the district court relied to elevate Mr. Hancock's sentence by an additional 67 months just does 'not bear the weight assigned,' *U.S. v. Cavera*, 550 F.3d at 191, when considered against the evidence that this defendant is one with an entirely realistic prospect for rehabilitation." *Id*. at 34.

On August 23, 2013, the Second Circuit dismissed the appeal as barred by the waiver of appellate rights contained in Mr. Hancock's plea agreement with the Government. *U.S. v. Hancock*, No. 12-3638, Dkt. 68.

On November 24, 2014, Mr. Hancock, *pro se*, filed a petition in this Court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. First Habeas Petition. He asserted two claims in his petition: (1) ineffective assistance of counsel at trial, and (2) "[c]hanges in the case law of the United States Supreme Court . . . ." First Habeas Petition at 6.

On May 18, 2016, the Court granted Mr. Hancock's motion to appoint counsel. Order. ECF No. 17. On September 6, 2016, Magistrate Judge Garfinkel granted petitioner's motion to amend the petition and ordered that the petition be filed within forty-five days. Order. ECF No. 22. Mr. Hancock, through appointed counsel, did not meet the deadline. Rather, on January 6, 2017, Mr. Hancock filed an amended petition. Mot. to Vacate *Nunc Pro Tunc*, ECF No. 23. On July 7, 2017, appointed counsel moved to withdraw. ECF No. 29. In early 2018, new counsel was appointed. ECF Nos. 33-34.

On August 31, 2018, with the assistance of this new counsel, Mr. Hancock filed a motion to amend his amended petition, and attached his proposed second amended petition as Exhibit A, Second Amended Habeas Petition, ECF No. 43-1. Mr. Hancock asserts two claims in the second amended petition: (1) ineffective assistance of counsel for not contesting or preserving the career offender issue for appeal, *id*. at 5; and (2) an unconstitutional sentencing error due to the imposition of the career offender enhancement, *id*. at 9.

On September 13, 2018, the Government opposed Mr. Hancock's motion to amend and his Second Amended Habeas Petition. Gov't. Opp. to Def. Mot., ECF No. 44.

On September 24, 2018, Mr. Hancock replied to the Government's opposition memorandum. Pet. Reply Br. in Supp. of Mot. for Leave to Amend, ECF No. 45.

On December 19, 2018, the Court held a hearing on all pending motions. Minute Entry, ECF No. 46.

## II.       STANDARD OF REVIEW

A prisoner may challenge the legality of his or her sentence under 28 U.S.C. § 2255 if the sentence was: (1) imposed in violation of the Constitution or laws of the United States; (2) imposed by a court that lacked jurisdiction to sentence the prisoner; (3) in excess of the maximum detention authorized by law; or (4) otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

Courts shall grant petitioners leave to amend their section 2255 petitions when "justice so requires." FED. R. CIV. P. 15(a)(2); *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001) ("Given that motions to amend are not successive habeas petitions, the standard for granting or denying a motion to amend is thus governed by Federal Rule of Civil Procedure 15(a). The application of Rule 15(a) is supported by 28 U.S.C. § 2242, which states that a petition for habeas corpus 'may be amended or supplemented as provided in the rules of procedure applicable to civil actions'[.]").

The bar for a section 2255 petition is high, and "even constitutional errors will not be redressed through a section 2255 petition unless they have had a 'substantial and injurious effect' that results in 'actual prejudice' to the petitioner." *Wilson v. U.S.*, No. 3:16-cv-1791 SRU, 2017 WL 3044652, at *1 (D. Conn. July 18, 2017), *quoting Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal citations omitted); citing *Underwood v. U.S.*, 166 F.3d 84, 87 (2d Cir. 1999) (applying Brecht's harmless error standard to a section 2255 petition).

A "federal prisoner may not use a section 2255 petition to relitigate questions that were expressly or impliedly resolved during a direct appeal, absent 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Wilson*, 2017 WL 3044652 at *1, *quoting U.S. v. Becker*, 502 F.3d 122, 127 (2d Cir. 2013) (internal citations omitted).

Challenges under section 2255 must also be timely. They must be filed within one year of: "(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f).

Even a timely filed challenge may be barred if a petitioner "knowingly, voluntarily, and competently" waived his or her appeal rights before or at sentencing. *See U.S. v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000). Second Circuit courts generally recognize the enforceability of appeal waivers, but will grant exceptions in narrow circumstances. *See id.* at 318– 19 ("When upholding the validity of these waivers, we have recognized that the benefits of such waivers inure to both government and the defendant alike, with the government receiving the benefit of reduced litigation, and the defendant receiving some certainty with respect to his liability and punishment . . . . The[] exceptions to the presumption of the enforceability of a waiver, however, occupy a very circumscribed area of our jurisprudence.").

## III.   DISCUSSION

### A.  Amendment of Petitioner's Section 2255 Petition

Motions to amend section 2255 petitions are viewed similarly to motions to amend complaints. *Littlejohn*, 271 F.3d at 363 ("The application of Rule 15(a) is supported by 28 U.S.C. § 2242, which states that a petition for habeas corpus 'may be amended or supplemented as provided in the rules of procedure applicable to civil actions'[.]"). Rule 15 of the Federal Rules of Civil Procedure governs the determination of whether to permit a motion to amend; it advises that the Court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Courts "nonetheless retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive," *Littlejohn*, 271 F.3d at 363, *citing Foman v. Davis*, 371 U.S. 178, 182 (1962), or futile, *Grullon v. City of New Haven*, 720 F.3d 133, 140–142 (2d Cir. 2013), citing *Foman*, 371 U.S. at 182.

Mr. Hancock requests leave to amend his petition as "necessary by undersigned counsel's investigation, an assessment of the pleadings, and two court decisions issued after the filing of the First Amended §2255 Motion." Mot. to Amend/Correct Mot. to Vacate *Nunc Pro Tunc* at 3. Specifically, Mr. Hancock seeks to revise his constitutional argument in light of the U.S. Supreme Court's decision in *Beckles v. U.S.*, 137 S. Ct. 886 (2017), and to include recent Second Circuit cases regarding the career offender enhancement. Mot. to Amend/Correct Mot. to Vacate *Nunc Pro Tunc* at 1–2, 4.

The Government argues that Petitioner's amendment is untimely and futile because: (1) his appeal waiver bars this collateral attack on his sentence and (2) he cannot show that his sentence was fundamentally defective, a miscarriage of justice, or the product of objectively unreasonable assistance of counsel. Gov't. Opp. to Def. Mot. at 3–5. The Court agrees.

The Court finds no dilatory, unfairly prejudicial or abusive tactics[4] in Mr. Hancock's motion for a second amendment to his habeas petition, but nevertheless denies the motion to amend as futile.

While Mr. Hancock cites to cases germane to contemporary applications of the career offender enhancement, he waived the right to raises these issues as a result of his appeal waiver in 2012. Plea Agree at 8. To overcome this appeal waiver, Mr. Hancock must show one of the following four circumstances: (1) the waiver was not made knowingly, voluntarily, and competently, (2) the sentence was imposed based on constitutionally impermissible factors, such as racial bias, (3) the government breached the plea agreement, or (4) the sentencing court failed to enunciate any rationale for the defendant's sentence. *See Gomez-Perez*, 215 F.3d at 320

Mr. Hancock has alleged only one of those four circumstances: that his plea was made unknowingly, involuntarily, or incompetently due to the ineffectiveness of counsel. *Gomez-Perez*, 215 F.3d at 320. As discussed below, Mr. Hancock, however, has not met the standard for demonstrating ineffective assistance of counsel.

Mr. Hancock's motion to amend or correct his First Habeas Petition therefore must be denied as futile.[5]

---

[4] The Court finds Mr. Hancock's motion to amend timely. While the parties are well beyond the forty-five-day amendment period afforded by Judge Garfinkel to Mr. Hancock's first-appointed counsel, Order. ECF No. 22, second-appointed counsel was not representing Mr. Hancock at the time of Judge Garfinkel's order and did not contribute to that delay. Further, nothing in the record suggests that Mr. Hancock contributed to first-appointed counsel's delay. To the contrary, Mr. Hancock filed a motion to request a response from first-appointed counsel on June 1, 2017. ECF No. 27.

Following the appointment of Mr. Hancock's present counsel, the parties jointly consented to three extensions of time, ECF Nos. 37, 39, 41; *see also* Gov't. Opp. to Defs. Mot. at 3. Mr. Hancock filed his motion to amend and proposed amended petition by the final consent deadline of August 31, 2018. ECF No. 43. The Government has alleged no prejudice resulting from these extensions.

[5] Though the Court denies Petitioner's motion to amend as futile, the Court nevertheless cites to both Petitioner's *pro se* First Habeas Petition and Petitioner's Second Amended Habeas Petition, which was prepared with the assistance of counsel, in order to construe the pleadings in the light most favorable to Petitioner.

### B.    Mr. Hancock's Ineffective Assistance of Counsel Claim

Since 2013, Mr. Hancock has maintained that the career offender enhancement was not appropriate in his case. *See U.S. v. Hancock*, No. 12-3638 (2d Cir. 2013), Dkt. 1. Before the Second Circuit, Mr. Hancock argued that the career offender classification was predicated on a first-degree robbery charge that had occurred "many years earlier."[6] Brief and Appendix for Appellant Vince Hancock at 5. He further argued "that, given the totality of the circumstances in this case, the career offender designation . . . just does 'not bear the weight assigned,' when considered against the evidence that [Mr. Hancock has] an entirely realistic prospect for rehabilitation." *Id.* at 34 (alterations in original); *see also*, *U.S. v. Cavera*, 550 F.3d at 191. The Second Circuit denied Mr. Hancock's appeal as barred by the waiver of appellate rights contained in his plea agreement. *U.S. v. Hancock*, No. 12-3638 (Mr. Hancock "has not demonstrated that the waiver of his appellate rights is unenforceable under *U.S. v. Gomez-Perez.*"); *see*, *Gomez-Perez*, 215 F.3d at 318.

Before this Court,[7] Mr. Hancock seeks to nullify the 2012 plea agreement by arguing ineffective assistance of counsel. Brief in Supp. of Mot. under 28 U.S.C. §2255, ECF No. 2;

---

[6] In some circumstances, a direct appeal would bar a section 2255 petition. A section 2255 petition may not be used "to relitigate questions that were expressly or impliedly resolved during a direct appeal, absent 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Wilson*, 2017 WL 3044652 at *1. Mr. Hancock's direct appeal undoubtedly challenged the career offender enhancement. However, it was not chiefly characterized as an ineffectiveness of counsel argument. The Court finds that Mr. Hancock's present arguments were not fully litigated before the Second Circuit, and the Court thus proceeds to the merits of Mr. Hancock's 2255 petition.

[7] The Court notes that Mr. Hancock's first habeas petition may be untimely under 28 U.S.C. § 2255(f). Mr. Hancock's first habeas petition was filed on November 24, 2014, more than a year after the Second Circuit's denial of Mr. Hancock's direct appeal. First Habeas Petition; *U.S. v. Hancock*, No. 12-3638. Because counsel did not fully brief the issue of timeliness, the Court cannot be certain that it possesses complete information (*e.g.*, delays in delivery of the Second Circuit decision to Mr. Hancock, delays in the prison's mailing of Mr. Hancock's first habeas petition). Given this incomplete information and since Mr. Hancock missed the statutory deadline by, at most, mere months, the Court will consider the merits of his habeas petition.

Second Amended Habeas Petition at 4 ("First, Mr. Hancock does not challenge the Career Offender finding as a violation of his due process rights—a claim that arguably is foreclosed by *Beckles*—but instead frames the claim as a violation of his Sixth Amendment right to effective assistance of counsel."). This argument fails.

The applicable standard for Mr. Hancock's ineffective assistance of counsel claim is articulated in *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To prevail under the *Strickland* test, Mr. Hancock must demonstrate that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McCoy v. U.S.*, 707 F.3d 184, 187 (2d Cir. 2013) ("We agree with the district court that trial counsel's failure to object to the second offender enhancement does not constitute constitutionally deficient performance. As the court explained, at the time of McCoy's trial and sentencing the District of Connecticut 'had proceeded with the long-held belief that prior Connecticut convictions for sale of narcotics qualified categorically as . . . felony drug offenses under 21 U.S.C. § 841(b)(1).'") (internal citations and quotations omitted) (*quoting Strickland*, 466 U.S. at 688)). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86 (2011).

Mr. Hancock argues that his counsel's "performance fell below an objective standard of reasonableness" and "that deficiency caused the Defendant prejudice." Brief in Supp. of Mot. under 28 U.S.C. §2255, ECF No. 2, at 5, ¶ 8; Second Amended Habeas Petition at 1 ("trial counsel was ineffective in negotiating and recommending a plea agreement that conceded that Mr. Hancock was a Career Offender."). The Court disagrees.

Mr. Hancock argues that his counsel's concession of the career offender enhancement constituted constitutionally inadequate legal representation. *Id*. The Court disagrees.

Under the Federal Sentencing Guidelines, "(a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.

Mr. Hancock's career offender enhancement was based upon prior Connecticut state convictions for robbery in the first degree and possession with Intent to Sell Narcotics and possession of a firearm. *See* Plea Agree. at 7;[8] Second Amended Habeas Petition at 2–3; Sentencing Trans. at 9–10.

At the time of Mr. Hancock sentencing, Second Circuit courts considered a Connecticut state conviction for robbery in the first degree a "crime of violence" predicate offense for a career offender enhancement. *See, e.g.*, *U.S. v. Wiggan*, 530 F. App'x 51, 57 (2d Cir. 2013) ("So defined, first degree robbery under Connecticut law falls squarely within the first prong of the definition of 'violent felony,' which covers offenses having 'as an element the use, attempted use, or threatened use of physical force against the person of another.' 18 U.S.C. § 924(e)(2)(B)(i) . . . . As a result, Wiggan's two first degree robbery offenses are violent felonies within the meaning of 18 U.S.C. § 924(e)(1).").[9]

---

[8] ECF header pagination unless otherwise noted.

[9] Mr. Hancock also faults trial counsel for not arguing that the robbery conviction resulted from an Alford plea. Brief in Supp. of Mot. at 5. That argument fails legally, as "'[a]n Alford plea results in a conviction' that can be used as a predicate offense under U.S.S.G. § 4B1.1(a)." *Gonzales v. United States*, No. 06-cr-268 PCD, 2010 WL 670236, at *2 (D. Conn. Feb. 19, 2010).

Second Circuit courts also considered a "possession with intent to sell narcotics" charge under Connecticut law a predicate offense for a "controlled substance" career offender enhancement. *See, e.g., U.S. v. Clark*, 664 F. App'x 29, 31 (2d Cir. 2016) ("And the District Court properly determined, based on facts confirmed by Anderson during his plea colloquy in state court, that his 2004 conviction qualified as a 'controlled substance offense' under § 4B1.2(b) of the Sentencing Guidelines."), *cert. denied sub nom. Anderson v. U.S.*, 137 S. Ct. 1833 (2017).

As a result, in 2012, it was objectively reasonable for Mr. Hancock's counsel to maintain that Mr. Hancock's prior convictions for robbery in the first degree and possession with intent to sell narcotics constituted predicate offenses for a career offender enhancement.

Mr. Hancock also argues that his trial counsel should have preserved the career offender issue for appeal. Mot. to Amend/Correct Mot. to Vacate *Nunc Pro Tunc* at 4. Mr. Hancock argues that counsel's decision to stipulate to the career offender enhancement was "unreasonable and unexplained." Second Amended Habeas Petition at 8, ¶ 10. The Court disagrees.

First, the failure to preserve an argument for appeal is not *per se* proof of ineffective assistance of counsel. Rather, courts apply the *Strickland* test to failure to preserve claims. *See Anaya v. Brown*, No. 05-cv-8974 DLC, 2006 WL 2524079, at *9 (S.D.N.Y. Sept. 1, 2006) ("Anaya argues that the default should be excused because his attorney's failure to preserve the objection fell below constitutional standards of effective assistance. In certain circumstances, counsel's ineffectiveness in failing properly to preserve a claim for review can constitute cause to excuse a procedural default. Assuming that cause could be established, Anaya must still demonstrate prejudice Anaya could meet his burden of showing prejudice by establishing that there is a 'reasonable probability' that, but for counsel's failure, 'the result of the proceeding

15

would have been different.'") (internal citations omitted); *Shearer v. Smith*, No. 08-cv-9905 ER, 2013 WL 5586311, at *4–5 (S.D.N.Y. Oct. 9, 2013) ("Applying the standard set forth in *Strickland* . . . , Judge Yanthis found that, because Petitioner's counsel's performance was not objectively unreasonable, and because his counsel's purported error would not have altered the outcome of the proceeding, Petitioner failed to satisfy either prong of Strickland . . . . The Court finds that Judge Yanthis properly interpreted and applied the clear holding of Strickland.").

Second, Mr. Hancock's counsel was "not required to forecast changes or advances in the law." *McCoy*, 707 F.3d at 187.

Mr. Hancock claims that the "building blocks" for decisions such as *Epps* and *Townsend*, Pet. Reply Br. in Supp. of Mot. for Leave to Amend at 8, which might have changed the outcome, *id*. at 9, were available to defense counsel in 2012, *id*. at 8, *citing McCoy*, 707 F.3d at 187–88 ("Several weeks after trial, a district court in Connecticut held, for the first time, that a conviction under Connecticut General Statute § 21a–277(a) was not categorically a conviction for a 'serious drug offense' under 18 U.S.C. § 924(e) because of the criminalization in Connecticut of benzylfentanyl and thenylfentanyl. *United States v. Madera*, 521 F.Supp.2d 149, 154–55 (D.Conn.2007) . . . . A year after *Madera*, we held that a conviction under § 21a–277(b) was not categorically a conviction for a 'controlled substance offense' as that term is defined in U.S.S.G. § 4B1.2(b), the career offender guideline. *United States v. Savage*, 542 F.3d 959, 960 (2d Cir.2008)." (some internal citations and quotations omitted)).

Accordingly, Mr. Hancock argues that these cases "should have suggested to Mr. Hancock's trial counsel that he should not stipulate to Mr. Hancock's status as a Career offender based on his robbery and drug trafficking convictions . . . ." Pet. Reply Br. in Supp. of Mot. for Leave to Amend at 8. The Court disagrees.

Even when cases forecast possible legal change, they neither guarantee that change nor impose a forward-looking duty on counsel. Legal forecasting is not required of defense counsel because "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. Criminal defense counsel are not required to provide perfect assistance or adhere to "best practices." *Harrington*, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."). They are simply required to provide objectively reasonable representation. *Strickland*, 466 U.S. at 688. Nothing in the record suggests that Mr. Hancock's trial counsel provided less than objectively reasonable representation. Indeed, the favorable plea agreement negotiated by trial counsel suggests the opposite.

"To prevail on an ineffective assistance of counsel claim, a habeas petitioner must demonstrate that . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McCoy*, 707 F.3d at 187. Moreover, a petitioner must prove that such errors had a "'substantial and injurious effect' that result[ed] in 'actual prejudice' to the petitioner." *Wilson*, 2017 WL 3044652, at *1.

Mr. Hancock argues that but for the career offender stipulation, he would have received a lighter sentence. The Government argues that Mr. Hancock received the benefit of his bargain and that his appeal waiver should be enforced. *See*, *e.g.*, Gov't. Opp. to Def. Am. Mot., ECF No. 25, at 8. The Court agrees.

A grand jury indicted Mr. Hancock on nine separate counts, including seven drug counts and two firearms counts. *U.S. v. Vince Hancock*, Grand J. N-11-1. Count Eight, the "possession with intent to distribute cocaine base, cocaine, and heroin" charge, was arguably the most

serious, as it included three drugs, and that charge alone carried a maximum penalty of 240 months imprisonment. 21 U.S.C. § 841(b)(1)(C) ("such person shall be sentenced to a term of imprisonment of not more than 20 years . . ."). Count Nine, a firearms charge, carried a penalty of 60 months imprisonment, to run consecutively to any other prison time. 18 U.S.C. § 924(c)(1)(A), (c)(1)(D)(ii). In other words, if Mr. Hancock had been convicted on Count Nine, in conjunction with any of the other charges, he would have received a sentence of 60 months, nearly half of the 151 month sentence he ultimately received, in addition to any sentence required by any of the other convictions.

Mr. Hancock's trial counsel, however, successfully reduced Mr. Hancock's criminal exposure from nine pending charges to a conviction on a single count and prevented a second offender notice under 21 U.S.C. § 851, which further decreased Mr. Hancock's criminal sentencing exposure. Plea Agree.

As a result, on the basis of this record, the Court cannot find that any choices made or foreclosed by Mr. Hancock's counsel during the bargaining process had a "'substantial and injurious effect' that result[ed] in 'actual prejudice' to the petitioner." *Wilson*, 2017 WL 3044652, at *1.

### C. Unconstitutional Sentencing Error

Before reaching the merits of Mr. Hancock's second claim, the Court must first determine: (1) if he waived his right to attack or appeal his sentence collaterally, and (2) if he has minimally demonstrated "actual prejudice" as a result of the sentence imposed by Judge Bryant. *Wilson*, 2017 WL 3044652, at *1.

### 1. Petitioner's Appeal Waiver

Second Circuit courts generally recognize the enforceability of appeal waivers. *Gomez-Perez*, 215 F.3d 318–19. ("When upholding the validity of these waivers, we have recognized that the benefits of such waivers inure to both government and the defendant alike. . . . The[] exceptions to the presumption of the enforceability of a waiver. . . occupy a very circumscribed area of our jurisprudence."). In *Gomez-Perez*, the Second Circuit acknowledged that a waiver of appellate rights may be unenforceable in four circumstances, as discussed above. *Id*. at 320.

Mr. Hancock argues that his appeal waiver was not made "knowingly, voluntarily, and competently."[10] *See e.g.*, First Habeas Petition at 8, ¶ 10. The Government argues that Mr. Hancock knowingly, voluntarily, and competently waived his right to appeal on at least two occasions. Gov't Resp. to Hancock's Mot. at 15–16. The Court agrees.

Mr. Hancock first waived his right to appeal or collaterally attack his sentence upon reviewing, with his counsel, the February 26, 2012 plea agreement, which stated: "The defendant acknowledges that he is knowingly and intelligently waiving these rights." Plea Agree. at 8. Mr. Hancock then underwent detailed questioning by Judge Smith regarding his understanding of the rights he was waiving. *See* Plea Hearing Trans. at 12–13, 54, 75–76. The record thus reveals a lengthy court proceeding regarding Mr. Hancock's understanding that he was waiving his right to appeal a term of imprisonment at or below 151 months, in addition to a signed plea agreement

---

[10] Mr. Hancock does not address the *Gomez-Perez* circumstances directly in his Second Amended Habeas Petition, but his ineffective assistance of counsel claim suggests that the waiver was not knowingly, voluntarily and competently made. By contrast, Petitioner makes no allegation of impermissible racial or ethnic bias on the part of the sentencing judge, or malfeasance on the part of the government in executing the plea agreement, or failure of the sentencing judge to enunciate "any rationale" for the sentence. *See Gomez-Perez*, 215 F.3d at 320. On this record, there is not even a colorable argument as to these other three circumstances.

by Mr. Hancock. In short, there is nothing in this record to support Mr. Hancock's current argument that his appeal waiver was not made "knowingly, voluntarily, and competently."

As a result, consistent with the Second Circuit's earlier ruling on Mr. Hancock's direct challenge to his sentence, *U.S. v. Hancock*, No. 12-3638, the waiver of appeal rights in Mr. Hancock's plea agreement is enforceable. *See Gomez-Perez*, 215 F.3d at 319 ("Accordingly, we have upheld waiver provisions even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement."); *see also Sanford v. U.S.*, 841 F.3d 578, 580 (2d Cir. 2016) (enforcing collateral attack waiver even when the defendant might have been "sentenced under a Guidelines provision that is unconstitutional.").

### 2. Actual Prejudice

In limited circumstances, a petitioner may still appeal despite having consented to an appeal waiver. The bar for those appeals, like all section 2255 petitions, is high, and "even constitutional errors will not be redressed . . . unless they have had a 'substantial and injurious effect' that results in 'actual prejudice' to the petitioner. *Wilson*, 2017 WL 3044652, at *1. That prejudice must amount to a "miscarriage of justice." *Reed v. U.S.*, No. 3:16-cv-01356 SRU, 2017 WL 5573131, at *6.

Mr. Hancock argues that Judge Bryant's application of the career offender enhancement was a miscarriage of justice because it increased the length of the Sentencing Guideline range from 84–105 to 151–188 months. Second Amended Habeas Petition at 10.

The Government argues that there was no error given: (1) the law on career offender enhancements in 2012, (2) Judge Bryant's independent determination of Petitioner's sentence, and (3) the ultimate sentence itself. Gov't. Opp. to Def. Mot. at 7–10. The Court agrees.

As discussed above, the record supports a finding that Mr. Hancock's prior offenses were appropriate predicate offenses in 2012. *See* Brief and Appendix for Appellant Vince Hancock at 28. The record also supports a finding that Judge Bryant independently analyzed the facts and sentencing factors set forth in 18 U.S.C. 3553. Sentencing Trans. at 22–26. In addition, given the benefit of the bargain obtained by Mr. Hancock through his plea agreement, there was neither actual prejudice nor a miscarriage of justice.

Indeed, under the plea agreement and as discussed above, the Government dismissed eight other pending charges against Mr. Hancock: possession with intent to distribute and distribution of cocaine base and heroin [June 15, 2011 count]; possession with intent to distribute and distribution of cocaine base and heroin [June 27, 2011 count]; possession with intent to distribute and distribution of cocaine base and heroin [July 21, 2011 count]; possession with intent to distribute and distribution of heroin [Sept. 19, 2011 count]; possession with intent to distribute and distribution of heroin [Sept. 20, 2011 count]; unlawful possession of a firearm by a convicted felon; possession with intent to distribute cocaine base, cocaine, and heroin, and possession of a firearm in furtherance of a drug trafficking crime. *See U.S. v. Vince Hancock*, Grand J. N-11-1, Indictment (Jan. 18, 2012); Plea Agree. The Government also chose not to pursue a firearm enhancement at sentencing, Gov't Resp. to Hancock's Mot at 23–24.

In any event, there is nothing in this record to suggest that Mr. Hancock's sentence could not have been 151 months, if the Government decided to pursue all of the counts against him, particularly since the statutory maximum for these crimes was at least 300 months, 149 months above Mr. Hancock's actual sentence. 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 924(c)(1)(A), (c)(1)(D)(ii).

As a result, Petitioner's motion to amend or correct his motion to Vacate, Set Aside, or Correct his Sentence, ECF No. 43, and Petitioner's Second Amended Habeas Petition, ECF No. 43-1, must be denied as futile. *See Grullon*, 720 F.3d at 140–142. The Court now turns to the remaining arguments suggested by Petitioner's First Habeas Petition.

### D. Mr. Hancock's Remaining Arguments

The arguments raised in Mr. Hancock's First Habeas Petition largely relate to ineffectiveness of counsel and unconstitutional sentencing error, as discussed above. To the extent that Mr. Hancock's First Habeas Petition raises the arguments appealed directly to the Second Circuit, he may not relitigate those claims here, as discussed above. *Wilson*, 2017 WL 3044652 at *1. Additionally, Mr. Hancock's First Habeas Petition is likely untimely under 28 U.S.C. § 2255(f), as discussed above. The Court nevertheless will address why Mr. Hancock's seven remaining claims fail.

First, Mr. Hancock claims that his counsel failed to argue a violation of the Speedy Trial Act because he was arrested on September 29, 2011. Brief in Supp. of Mot. under 28 U.S.C. §2255 at 4. The record reflects that Mr. Hancock was arrested on state charges on September 29, 2011, but not indicted on federal charges until January 18, 2012. *U.S. v. Vince Hancock*, Grand J. N-11-1, Indictment (Jan. 18, 2012), ECF No. 7-1.

Under federal law, "it is well-settled that the statutory time limits imposed by the Speedy Trial Act begin to run after the *federal* arrest, and not after the preceding *state* arrest and indictment." *United States v. Simmons*, 923 F.2d 934, 955 (2d Cir. 1991) (emphasis in original). Furthermore, the Speedy Trial Act permits a 70-day lapse between indictment and trial, or entry of a guilty plea. 18 U.S.C. § 3161(c)(1). Mr. Hancock's guilty plea was entered 56 days

following his federal indictment. Plea Agree. As a result, there was no violation of the Speedy Trial Act.

Second, Mr. Hancock claims that a career offender enhancement could not be imposed because the Government did not file an information under 21 U.S.C. § 851. Brief in Supp. of Mot. under 28 U.S.C. §2255 at 4, 7–8. As the Second Circuit held in *U.S. v. Ramirez*, 454 F.3d 380, 381 (2d Cir. 2006), however: "we remain bound by our holding in *United States v. Whitaker*, 938 F.2d 1551 (2d Cir.1991), that the filing of a prior felony information under § 851(a)(1) 'is required only where the statutory minimum or maximum penalty under Part D of Title 21 is sought to be enhanced, not where a defendant, by virtue of his criminal history, receives an increased sentence under the Sentencing Guidelines within the statutory range.'" As a result, this argument fails.

Third, Mr. Hancock alleges that his robbery conviction cannot serve as a career offender predicate because he entered an Alford plea. Brief in Supp. of Mot. under 28 U.S.C. §2255 at 5–7. But "'[a]n Alford plea results in a conviction' that can be used as a predicate offense under U.S.S.G. § 4B1.1(a)." *Gonzales*, 2010 WL 670236, at *2. As a result, this argument too fails.

Fourth, Mr. Hancock argues that his counsel failed to oppose the application of the firearms enhancement. Brief in Supp. of Mot. under 28 U.S.C. §2255 at 9–10. But the Government did not seek the firearms enhancement. Plea Agree. As a result, Mr. Hancock's sentence could not have been affected by it and thus, this argument fails as well.

Fifth, Mr. Hancock cites the U.S. Supreme Court's recent decision in *Bond v. U.S.*, 572 U.S. 844, 866 (2014), for the proposition that his drug trafficking and firearms possession activities were "purely . . . of a State issue and not one of a Federal issue." Brief in Supp. of Mot. under 28 U.S.C. §2255 at 10; *Bond v. U.S.*, 572 U.S. 844, 866 (2014). The "dual sovereignty"

doctrine, however, allows the federal government to prosecute conduct even if the state has prosecuted that conduct. *U.S. v. Davis*, 906 F.2d 829, 832 (2d Cir. 1990) ("Under this well-established principle, a federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one. . . . Each has the power, inherent in any sovereign, independently to determine what shall be an offense against its authority and to punish such offenses. When a single act violates the laws of two sovereigns, the wrongdoer has committed two distinct offenses.") (*citing*, *generally*, *U.S. v. Wheeler*, 435 U.S. 313, 316–20 (1978)).

The Supreme Court's decision in *Bond* did not overturn the dual sovereignty doctrine or suggest that Controlled Substance Act charges could not properly be brought in federal court. *Gonzales v. Raich*, 545 U.S. 1, 9 (2005) ("The CSA [Controlled Substances Act] is a valid exercise of federal power . . . ."). Thus, this argument fails.

Sixth, Mr. Hancock now claims that trial counsel coerced him into accepting the plea agreement. Brief in Supp. of Mot. under 28 U.S.C. §2255 at 3, *et seq*. As discussed above, there is nothing in the record to suggest coercion by Mr. Hancock's counsel, much less support a claim of coercion. Indeed, as the Second Circuit has recognized, Mr. Hancock's statements under oath during his plea hearing are to be accepted as they were at the time they were given: the truth provided under oath upon penalty of perjury. *See U.S. v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) ("We agree with the district court that the defendant has not shown deficient performance by his attorney. . . . [T]he district court was entitled to rely upon the defendant's sworn statements, made in open court with the assistance of a translator, that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving his right to appeal a sentence below 120

months, and had been made no promises except those contained in the plea agreement."); *see also*, *U.S. v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) ("This testimony carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.").

Here, Judge Smith asked Mr. Hancock a series of questions regarding his understanding of and willingness to accept the plea agreement and Mr. Hancock answered in the affirmative to each of these questions without expressing doubt. *See, e.g.,* Plea Hearing Trans. at 67 (Q: "Sir, are you totally and completely satisfied with the legal representation and advice you have received?" A: "Yes."). Based upon Petitioner's answers, Judge Smith found that Petitioner pled guilty "knowingly, voluntarily, intelligently . . . with the effective assistance of legal counsel." *Id*. at 75–76. Given this record and the prevailing Second Circuit decisions, there is no basis for Mr. Hancock's argument that he was coerced.

Seventh and finally, Mr. Hancock claims that the Supreme Court's decisions in *Bond*, *Descamps*, and *Alleyne* compel reconsideration of his case. Brief in Supp. of Mot. under 28 U.S.C. §2255 at 3–4, 9–10; *Bond*, 572 U.S. 844; *Descamps v. U.S.*, 570 U.S. 254 (2013); *Alleyne v. U.S.*, 570 U.S. 99 (2013). The Court disagrees.

First, as discussed above, *Bond* is inapposite to Controlled Substance Act cases.

Second, *Descamps* also is not applicable here. The Supreme Court in *Descamps* prohibited sentencing courts from applying a modified categorical approach in a narrow range of cases involving "indivisible" criminal statutes. *Descamps*, 570 U.S. at 257–58 ("This case presents the question whether sentencing courts may also consult those additional documents when a defendant was convicted under an 'indivisible' statute—i.e., one not containing

25

alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense . . . . we hold that sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements."). *Descamps*, however, preserved the use of the modified categorical approach in the context of "a divisible statute, listing potential offense elements in the alternative." *Descamps v. U.S.*, 570 U.S. at 260.

There is nothing to suggest that *Descamps* impacts the application of the career offender enhancement in Mr. Hancock's case. For example, Mr. Hancock's prior conviction for possession of narcotics with intent to distribute, a violation of Connecticut General Statutes § 21a-277(a), involves a divisible statute. *See U.S. v. Beardsley*, 691 F.3d 252, 264 (2d Cir. 2012) (explaining that Connecticut General Statutes § 21a-277(b)—which contains the same list of alternative elements as Section 21a-277(a)—sets forth "qualifying and non-qualifying offenses in distinct subsections or elements of a list," thereby warranting application of 'the modified categorical approach.'"). As a result, Mr. Hancock has not credibly argued that his criminal matters involve the narrow range of cases addressed by the Supreme Court in *Descamps*.

Third and finally, *Alleyne* is inapposite to this case. There, the Supreme Court held that, in limited circumstances, facts that increase mandatory minimum sentences, such as whether a weapon was brandished, should be submitted to a jury. *Alleyne*, 570 U.S. at 116. The Supreme Court, however, carefully preserved the sentencing role of judges:

> In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment.

*Id.* In any event, Mr. Hancock's case does not involve either increasing a statutory maximum or a mandatory minimum sentence. As a result, *Alleyne* has nothing to do with this case.

Accordingly, Mr. Hancock's claims all fail and are otherwise barred by his appeal waiver.

## IV.    CONCLUSION

For the reasons set forth above, the Court now **DENIES** Petitioner's First Habeas Petition, ECF No. 1; **DENIES** Petitioner's motion to amend or correct his motion to Vacate, Set Aside, or Correct his Sentence, ECF No. 43, and **DENIES** Petitioner's Second Amended Habeas Petition, ECF No. 43-1.

The Clerk of Court is respectfully requested to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of February, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
